

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00088-CR

SAMUEL DELEON GARZA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 28,996

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

## MEMORANDUM OPINION

A jury convicted Samuel Deleon Garza of assault arising out of his dating relationship with Maria Ulloa. Due to a previous conviction for assault involving family violence, Garza's offense was enhanced from a misdemeanor to a third degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A) (West Supp. 2014). Because Garza had previously committed two other felony offenses, the jury was instructed to assess punishment "for any term of not more than 99 or less than 25 years." TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2014). Garza pled "true" to the State's enhancement allegations and was sentenced to forty years' imprisonment. On appeal,[1] Garza argues only that the evidence was legally insufficient to prove that he and Ulloa had a dating relationship. We find that legally sufficient evidence establishes Garza's and Ulloa's dating relationship. Consequently, we affirm the trial court's judgment.

## I.      Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in

---

[1]In companion cases 06-14-00089-CR, 06-14-00091-CR, and 06-14-00092-CR, Garza appeals from three other convictions of assault dating violence, with a previous conviction of assault family violence. In companion case 06-14-00090-CR, Garza appeals from a conviction of burglary of a habitation. In companion case 06-14-00093-CR, Garza appeals from a conviction of obstruction or retaliation.

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

A person commits the offense of assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2014). An assault is a third degree felony if (1) it was "committed against . . . a person whose relationship to or association with the defendant is described by Section 71.0021(b)" of the Texas Family Code, and (2) the defendant has been previously convicted of assault "against . . . a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005" of the Texas Family Code. TEX. PENAL CODE ANN. § 22.01(b)(2)(A). Section 71.0021(b), titled "Dating Violence," defines a "dating relationship" as "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." TEX. FAM. CODE ANN. § 71.0021(b) (West 2014). "The existence of such a relationship [is] determined based on consideration of: (1) the length of the relationship; (2) the nature of the relationship; and (3) the frequency and type of interaction between the persons involved in the

relationship." *Id.* "A casual acquaintanceship or ordinary fraternization in a business or social context does not constitute a 'dating relationship' . . . ." TEX. FAM. CODE ANN. § 71.002(c) (West 2014).

In its indictment, the State alleged that on or about February 2, 2013, Garza "intentionally, knowingly, or recklessly cause[d] bodily injury to MARIA ULLOA, . . . with whom the defendant had or had had a dating relationship, by pulling [Ulloa's] hair or by striking [Ulloa's] head or face with [his] hand." Here, in order to establish the indicted offense, the State had to prove (1) that Garza intentionally, knowingly, or recklessly caused bodily injury to Ulloa, (2) that Garza and Ulloa had a dating relationship, and, (3) that Garza had previously been convicted of assault family violence.[2] Garza only challenges the second requirement.

## II.    Legally Sufficient Evidence Established that Ulloa Was in a Dating Relationship with Garza

The facts of this case are discussed in detail in our opinion in Garza's companion case, cause number 06-14-00093-CR, in which he appeals his conviction for obstruction or retaliation. Therefore, we discuss only the facts relevant to the determination of whether Ulloa was in a dating relationship with Garza.

A jury was permitted to find Garza guilty of this offense if he and Ulloa "had a continuing relationship of a romantic or intimate nature." TEX. FAM. CODE ANN. § 71.0021(b) (West 2011); *see also Hill v. State*, No. 01-10-00926-CR, 2012 WL 983338, at *3 (Tex. App.— Houston [1st Dist.] Mar. 22, 2012, no pet.) (mem. op., not designated for publication) (citing *White v. State*, No. 05-09-00112-CR, 2010 WL 2951748, at *2 (Tex. App.—Dallas July 29,

---

[2]The term "family violence" includes dating violence. TEX. FAM. CODE ANN. § 71.004 (West 2014).

4

2010, pet. ref'd) (mem. op., not designated for publication).[3] Garza argues that the evidence only established that he and Ulloa "had a casual acquaintanceship, either in social context or even charity." We disagree.

In December 2012, Ulloa met Garza as a married woman who had not seen her husband in ten years. In spite of her status as a legally married woman, she began dating Garza after he asked her out two weeks later. Garza spent the night at Ulloa's home approximately three nights out of the week. Michael (a pseudonym), Ulloa's young son, testified that Garza "would just like come and go." The two shared a bedroom, Garza kept some of his clothes there, and Ulloa cooked for Garza and did his laundry. Garza, who was unemployed, borrowed Ulloa's vehicle every night. Although Ulloa was aware that Garza was also dating someone else, she testified that she fell in love with her new boyfriend and that the two discussed the possibility of marriage. At some point during their relationship, Ulloa gave a photograph of herself to Garza with a note expressing her love for him scribbled on the back.

According to Ulloa, Garza began physically abusing her, but because she loved Garza, Ulloa endured the abuse for two months. Ulloa testified that on February 2, 2013, Garza assaulted her after accusing her of having an affair. Ulloa testified that even though Garza had assaulted her in the past, she continued to talk on the telephone with Garza until, on April 7, 2013, he assaulted her again and instructed her that he did not want to see her dating anyone else. When Ulloa talked with police officers after the assaults, she informed them that she was dating Garza.

---

[3]Although unpublished cases have no precedential value, we may take guidance from them "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

5

The evidence shows that Ulloa was previously married, that Garza had another girlfriend, and that Garza abused Ulloa. However, there is also evidence that Garza slept with Ulloa approximately three nights out of the week, that he kept some of his belongings there, that Ulloa loved Garza and discussed the possibility of marrying him, and that she considered Garza her boyfriend. It is up to the jury to resolve conflicts in and to weigh the evidence. *Hooper*, 214 S.W.3d at 13. We find that the evidence was sufficient for a rational jury to find, beyond a reasonable doubt, that Garza and Ulloa had a dating relationship as defined by the Texas Family Code. Accordingly, we overrule Garza's sole point of error on appeal.

## III. Conclusion

We affirm the trial court's judgment.


Ralph K. Burgess
Justice

Date Submitted: February 17, 2015
Date Decided: March 10, 2015

Do Not Publish

6